IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MYSTIE DAWN DEVAULT, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:13-cv-0155 |
| | ) | |
| v. | ) | Judge Mark R. Hornak |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

### I. INTRODUCTION

Plaintiff, Mystie Dawn Devault, brought this action pursuant to 42 U.S.C. § 405(g), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-403.

### II. BACKGROUND

#### A. Facts

Plaintiff was born on August 20, 1979. (Tr. 102). Ms. Devault completed one year of college, *id.* at 116, and her past relevant work experience includes employment as a store cashier, a medical technician at an assisted living facility, and as a senior caregiver at an assisted living facility, *id.* at 111. Plaintiff alleges disability as of August 4, 2008, *id.* at 17, 111, due to Bipolar

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, succeeding former Commissioner Michael J. Astrue. Social Security History - Social Security Commissioners, http://www.ssa.gov/history/commissioners.html (last visited on July 17, 2014). As a result, Acting Commissioner Colvin is now the official-capacity defendant in this action. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); Fed. R. Civ. P. 25(d).

II and Generalized Anxiety Disorder, *id.* at 111. The record reflects that Plaintiff has not engaged in substantial gainful work activity since her alleged date of disability.

### B. Procedural History

Plaintiff filed her application for disability insurance benefits on September 18, 2009, in which she claimed total disability as of August 4, 2008. *Id.* at 102. An administrative hearing was held on March 1, 2011, before Administrative Law Judge Leslie Perry-Dowdell. *Id.* at 43. Plaintiff chose to participate without legal representation, and testified. *Id.* at 45. Sheila Devault, Plaintiff's mother, as well as Alina Kurtanich, an impartial vocational expert ("VE"), also testified at the hearing. *Id.* at 44. On July 20, 2011, the ALJ rendered a decision unfavorable to Plaintiff, in which she found that, based on Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy and therefore, Plaintiff was not "disabled" within the meaning of the Act. *Id.* at 26. The ALJ's decision became the final decision of the Commissioner on January 11, 2013, when the Appeals Council denied Plaintiff's request to review the ALJ's decision. *Id.* at 1.

On January 30, 2013, Plaintiff filed her Complaint in this Court, seeking judicial review of the ALJ's decision. The parties have filed cross-motions for summary judgment, and for the reasons that follow, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

### III. LEGAL ANALYSIS

#### A. Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. § 405(g). If the Commissioner's finding is supported by substantial evidence, it is

2

conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798, 800 (3d Cir. 2010).[2]

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. § 404.1520. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and (5) if not, whether he or she can perform other work. *See* 20 C.F.R. § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1). This may be done in two ways:

---

[2] *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d. Cir. 2002) ("This test [whether a person is disabled for purposes of qualifying for SSI] is the same as that for determining whether a person is disabled for purposes of receiving social security disability benefits [DIB]. *Compare* 20 C.F.R. § 416.920 *with* § 404.1520."); *Sullivan v. Zebley*, 493 U.S. 521, 525 n.3 (1990) (holding that regulations implementing the Title II [DIB] standard, and those implementing the Title XVI [SSI] standard are the same in all relevant aspects.); *Morales v. Apfel*, 225 F.3d 310, 315-16 (3d. Cir. 2000) (stating claimants' burden of proving disability is the same for both DIB and SSI).

3

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. pt. 404, subpt. P, app. 1, *see Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell,* 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or,

(2) in the event that the claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy," *Campbell,* 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes the claimant from returning to his or her former job. *Newell,* 347 F.3d at 545-46; *Jones,* 364 F.3d at 503. Once it is shown that the claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given the claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford,* 399 F.3d at 551; *Newell,* 347 F.3d at 546; *Jones,* 364 F.3d at 503; *Burns,* 312 F.3d at 119.

Where a claimant has multiple impairments that may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 502 (3d Cir. 2009); 42 U.S.C. § 423(d)(2)(B) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the

4

individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the fifth step of the sequential evaluation process, after determining that, considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

## B. <u>Discussion</u>

As set forth in the Act and applicable case law, this Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

Plaintiff contends that the ALJ erred in failing to exercise a "heightened duty of care" to Plaintiff, an unrepresented claimant, by 1) not providing the VE with an accurate "function by function" assessment of Plaintiff's work-related limitations; 2) failing to account for her finding that Plaintiff has significant concentration deficits; 3) not discussing the impact of the side effects of Plaintiff's potent medications on her ability to work; 4) failing to ensure that the VE was an expert; and 5) by failing to ensure that the jobs identified by the VE were based on accurate and up-to-date job data. Pl.'s Br. in Supp. of Mot. for Summ. J. ("Pl.'s Br."), ECF No. 11, at 2. The Commissioner contends that the ALJ's decision should be affirmed because it is supported by substantial evidence.

5

"An ALJ owes a duty to a *pro se* claimant to help him or her develop the administrative record. When a claimant appears at a hearing without counsel, the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (internal quotation omitted). The question is not "whether every question was asked which might have been asked had the claimant been represented by an attorney, but whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Jozefick v. Shalala*, 854 F. Supp. 342, 348 (M.D. Pa. 1994) (quoting *Edwards v. Sullivan,* 937 F.2d 580, 585–86 (11th Cir.1991)).

As for Plaintiff's first point, she contends that at the administrative hearing, the ALJ failed to provide the VE "with a detailed, function by function description" of Plaintiff's work-related mental limitations. Pl.'s Br. at 8. However, this Court concludes that the ALJ's hypothetical to the VE was sufficiently comprehensive and sufficiently addressed Plaintiff's mental limitations. The ALJ provided an adequately-detailed function by function description of Plaintiff's individual work-related limitations by first asking the VE to "assume an individual of the same age, education and work experience as the claimant. This individual would be able to perform at all exertional levels." (Tr. 62).

After this statement pointing to any exertional limitation on Plaintiff's employment, the ALJ then asked the VE to assume that "[t]his individual is able to remember and carry out simple instructions with only superficial and/or no direct interaction with the public. And the work can be around coworkers throughout the day, but only occasional interaction with coworkers." *Id.* Then, the ALJ further specified the RFC parameters as to Plaintiff's mental limitations by asking the VE to assume that individual would be "limited to simple, routine and repetitive tasks performed in the work environment. Free of fast-paced production requirements, involving only

6

simple work-related decisions and routine workplace changes. . . . [T]he work would be isolated from the public with only occasional supervision and only occasional interaction with coworkers." *Id.* at 63. Such a hypothetical question sufficiently set forth both the physical and mental function limitations of Plaintiff's employment in the workforce.

Plaintiff avers that nothing in the RFC "even attempts to address" Plaintiff's difficulty maintaining concentration and pace, and cites to *Ramirez v. Barnhardt*, 372 F.3d 546 (3d Cir. 2004) for the proposition that "a limitation to simple routine repetitive tasks does not take into account deficiencies in pace," that "many employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time." Pl.'s Br. at 9. However, the ALJ in *Ramirez* completely failed to include deficiencies in pace in his RFC hypothetical to the VE, unlike here, where the ALJ included the restriction that Plaintiff's workplace tasks be "performed free of fast pace production requirements." (Tr. 20, 63). While Plaintiff claims that the ALJ's use of the term "production pace" is insufficient to satisfy the requirement in *Ramirez* that an ALJ's hypothetical question to the VE incorporate all of the claimant's credible pace limitations, a common-sense review of the hearing transcript compels this Court to conclude otherwise.[3]

---

[3] In her Reply Brief, Plaintiff then argues that the ALJ failed to conduct a "function-by-function" assessment in her written decision by failing to specifically set out a discussion of the pace limitation included in her RFC determination. Pl.'s Reply Br., ECF No. 17, at 7. Under Social Security Ruling 96-8P, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b) ["physical abilities"], (c) ["mental abilities"], and (d) ["other abilities affected by impairment(s)"] of 20 CFR 404.1545 and 416.945."

In her written decision, the ALJ set forth Plaintiff's RFC in which Plaintiff maintained the ability "to perform a full range of work at all exertional levels" (touching on Plaintiff's physical abilities function), and then moved on to discuss Plaintiff's work abilities as allegedly limited by her mental impairments, discussing, *inter alia*, the degree of Plaintiff's current treatment, how therapy and her prescribed medications have gradually improved her symptoms,

7

As for the ALJ's written decision, Plaintiff contends that the ALJ failed to sufficiently explain why she assigned great weight to some portions of the State Agency Medical Consultant Dr. Schiller's opinion and not others, and failed to discuss the side effects of Plaintiff's medications on her ability to do work. First, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence." *Fargnoli*, 247 F.3d at 43. Here, the ALJ specifically stated that

> it fully appears the State Agency Medical consultant determinations that clinical findings fail to support significant functional limitations preclusive of all substantial gainful activity are substantiated by the record as a whole (Exhibits 8F and 9F). In conclusion, I have assigned great weight to the opinion of the State Agency Medical Consultant; however, I have resolved all doubt in the claimant's favor, crediting as many of the claimant's alleged symptoms as can reasonably be supported by this medical record, and given a more restrictive residual functional capacity than that postulated by the State Agency.

(Tr. 24). This explanation for so weighing Dr. Schiller's medical opinion, while concise, is sufficient to satisfy the standard of providing "some indication of the evidence that [the ALJ] rejects and [her] reasons for discounting that evidence." *See Fargnoli*, 247 F.3d at 43.

Second, under the Social Security regulations, "[s]ymptoms are your own description of your physical or mental impairment," and "[y]our statements alone are not enough to establish that there is a physical or mental impairment." 20 C.F.R. § 404.1528(a). Plaintiff thoroughly cites to her own testimony about her side effects, and to drugs.com's enumerated potential side

---

Dr. Detore's evaluation that Plaintiff exhibited no signs of concentration or memory deficits, her difficulty with being around other people, her self-stated symptoms of forgetfulness caused by her medication, and her self-stated difficulty with daily activities although she does housework, prepares meals, cleans, drives, shops and plays video games, watches movies, does laundry, manages her bank accounts, reads, and independently cares for herself and her (at the time) three-year-old daughter. (Tr. 22, 23). The ALJ ultimately found that "[c]onsidering the totality of the foregoing documentary evidence and related testimony, it fully appears that . . . objective signs and clinical findings indicate a higher level of functioning than that alleged by the claimant at the hearing." *Id.* at 23. It appears to the Court that the ALJ's narrative discussion adequately incorporated Plaintiff's alleged concentration or pace deficits.

8

effects of Plaintiff's various medications, but does not cite to any objective medical evidence that Plaintiff experienced any of those potential side effects so as to call into question, for example, the medical assessment of Dr. Detore, cited to by the ALJ, that Plaintiff exhibited no signs of concentration or memory deficits. *See* (Tr. 22). Regardless, the ALJ accounted for deficits in concentration in her decision when she limited Plaintiff to "simple routine and repetitive tasks performed free of fast pace production requirements." *Id.* at 20. Therefore, this Court concludes that Plaintiff's challenges to the written decision of the ALJ are without merit.

Finally, Plaintiff contends that the ALJ failed to discharge her heightened duty to the claimant because the VE did not have the labor market expertise necessary to testify as a vocational expert, and that the job information the VE relied upon was neither reliable nor up to date. As for the VE's expertise, Plaintiff claims that the VE lacked the statistical analysis necessary to provide accurate testimony as to the numbers of occupations that would correspond to the ALJ's hypothetical questions. *See* Pl.'s Br. at 16. Under 20 C.F.R. § 404.1566(b), the Commissioner meets its burden at step five to establish that a claimant can perform "other work" if the Commissioner establishes that there is at least one job existing in substantial numbers in the national economy that the claimant can perform. *See also Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir.1987) ("Vocational expert testimony constitutes substantial evidence for purposes of judicial review where the testimony is in response to proper hypothetical questions which fairly set out all of a claimant's impairments.").

Here, the VE testified that there are over 1,400,000 hospital cleaner jobs in the national economy; 230,000 laundry worker jobs in the national economy; and 500,000 kitchen helper jobs in the national economy. (Tr. 63); *see Craigie v. Bowen,* 835 F.2d 56, 58 (3d Cir.1987) (holding 200 jobs in the regional economy was "a clear indication that there exists in the national

economy other substantial gainful work"). Even at this juncture, Plaintiff provides no evidence to counter these statistics or show that the jobs are in fact "few and far between." The Court concludes that Plaintiff's attack on the VE's qualifications and "statistical analysis" is insufficient to warrant considering the ALJ's decision as not supported by substantial evidence. *See Russell v. Astrue*, 2009 WL 2045201, at *12-13 (W.D. Pa. 2009).[4]

Also without merit is Plaintiff's attack on the VE's reliance on the *Dictionary of Occupational Titles* ("DOT"). *See* Pl.'s Br. at 17. Plaintiff claims that the ALJ erred in relying on the VE's testimony that DOT-listed occupations were suitable for Plaintiff because the DOT is outdated. *Id.* (contending that the Occupational Information Network, or O*NET, has replaced the DOT). As Defendant explains, the DOT remains an appropriate source of occupational data. Under 20 C.F.R. § 404.1566(d)(1), the Social Security Administration may take administrative notice of job information from the DOT. *See also Sargent v. Comm'r of Soc. Sec.*, 476 Fed. Appx. 977, 980 n. 1 (3d Cir. 2012) ("Both the ALJ and the vocational expert relied on the classifications in the DOT, as the applicable regulations permit."). Moreover, Plaintiff's focus on inconsistencies between the VE's testimony and "reliable vocational information" in O*NET is inapposite, as Social Security Ruling 00-4P sets forth that the relevant inquiry is whether VE testimony is consistent with the DOT. *See* S.S.R. 00-4P, 2000 WL 1898704, at *2, 4 (S.S.R. 2000).

---

[4] While this Court is aware that Plaintiff is neither a statistician nor a job placement specialist, when the ALJ specifically inquired of Plaintiff, after the conclusion of the VE's testimony, whether there "[were] any questions you'd like me to ask of the vocational expert," Plaintiff declined to ask any question at all of the VE, general or specific, big picture or small. *Id.* at 63-64.

## IV. CONCLUSION

Under the applicable standards of review and the current state of the record, this Court concludes that the decision of the ALJ should be affirmed as it is supported by substantial evidence - "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson*, 402 U.S. at 401 – and thus, this Court must defer to the ALJ's conclusion that Plaintiff is not disabled within the meaning of the Social Security Act. For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order will follow.

Mark R. Hornak
United States District Judge

Dated: July 18, 2014

cc: All counsel of record